THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JON W. ROMANO, Appellant. [845 NYS2d 151]—

Mercure, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), entered December 21, 2004, convicting defendant upon his plea of guilty of the crimes of attempted murder in the second degree (three counts) and reckless endangerment in the first degree (six counts).

On this appeal from a conviction by guilty plea, defendant seeks to preserve that portion of his plea agreement which favors him while at the same time disavowing that portion with which he is dissatisfied, namely the agreed-upon length of his sentence. In short, he seeks a reduction of his negotiated sentence but does not request vacatur of the plea and remittal

for a trial. Because defendant validly waived his right to appeal in connection with the plea, however, appellate review of his sentence has been foreclosed, as explained below.

In February 2004, defendant, who was 16 years old, wrote a suicide note and then took a loaded shotgun into the local high school that he had previously attended. After entering a bathroom and waiting for approximately 15 minutes, defendant used his cell phone to send text messages to his friends informing them that he was in the school with a gun and warning them to leave. A few minutes later, while exiting the bathroom, defendant encountered Eric Farrell, a student. Defendant pointed the shotgun at Farrell, who ran into an open classroom. At that point, defendant saw two other students, Jeffrey Kinary and Kristopher Steponik, in the hall outside the bathroom. Kinary made eye contact with defendant, who pointed the shotgun directly at him and pulled the trigger. Kinary, who dropped to the ground as he saw a flash of fire from the barrel of the gun, was not hit. After Kinary and Steponik heard a second shot being chambered and attempted to run and crawl away, defendant fired at them again and the wadding of the shotgun round struck Steponik in the leg. Defendant then entered a classroom with the gun but was pulled back out by Assistant Principal John Sawchuck, who attempted to wrestle the shotgun away from him. As a teacher, Michael Bennett, approached to assist Sawchuck, defendant swung around and the gun went off, striking Bennett in the leg. At Sawchuck's urging, defendant then agreed to give up the shotgun. Defendant was arrested and transported to the Rensselaer County Jail, where he was observed that night laughing at television news of the incident.

Defendant was subsequently charged in an indictment with three counts of attempted murder in the second degree, one count of assault in the second degree, and 82 counts of reckless endangerment in the first degree. In satisfaction of the indictment, he pleaded guilty to three counts of attempted murder in the second degree and six counts of reckless endangerment in the first degree. As part of the plea bargain, defendant agreed to waive his right to appeal. The terms of the plea agreement specifically provided that defendant would receive an aggregate prison term of 20 years, to be followed by a five-year period of postrelease supervision. Although County Court imposed the agreed-upon sentence, defendant now appeals, arguing that his

appeal waiver was not valid and that his sentence should be reduced in the interest of justice.[1]

It is well settled that absent a valid appeal waiver, "[t]his court is vested with discretion to review the sentence imposed upon a defendant, even where the sentence was given as part of a negotiated plea," and to reduce the sentence if warranted in the interest of justice (*People v Mackey*, 136 AD2d 780, 780 [1988], *lv denied* 71 NY2d 899 [1988]; *see People v Thompson*, 60 NY2d 513, 519-520 [1983]; *People v Gibbs*, 280 AD2d 698, 699 [2001], *lv denied* 96 NY2d 829 [2001]; *see also People v Smith*, 32 AD3d 553, 554 [2006]). Nevertheless, "[w]hile the Appellate Division may be divested of its unique interest-of-justice jurisdiction only by constitutional amendment (*see People v Pollenz*, 67 NY2d 264, 267-268 [1986]), a defendant is free to relinquish the right to invoke that authority and indeed does so by validly waiving the right to appeal" (*People v Lopez*, 6 NY3d 248, 255 [2006]; *see People v Seaberg*, 74 NY2d 1, 8-10 [1989]). A valid appeal waiver will not foreclose review of issues that go to the integrity of the process, such as challenges to the legality of a sentence, the voluntariness of the plea, or a defendant's competency—challenges that are not advanced herein; it will, however, foreclose an argument that a legal sentence is excessive (*see People v Lopez*, 6 NY3d at 255-256; *People v Seaberg*, 74 NY2d at 9-10). As the Court of Appeals has explained, to the extent that "[t]he right to appeal a validly imposed sentence . . . implicate[s] society's interest in the integrity of the criminal process, . . . that interest is protected by the procedural and substantive requirements imposed on the Trial Judge before the defendant may be sentenced" (*People v Seaberg*, 74 NY2d at 9).

The Court of Appeals has also long rejected the argument that appeal waivers interfere with the exercise of interest of justice jurisdiction by the Appellate Division. Specifically, "[a] defendant's decision to waive appeal does not interfere with the court's jurisdiction . . . ; it is simply a decision not to invoke the court's review power. By pleading guilty[,] a defendant *forecloses the appellate court from reviewing the merits* of the plea bargain in the interest of justice and there is nothing inherently wrong in a defendant similarly electing to *foreclose review*

---

**1.** Although we do not reach the question of whether this sentence was harsh and excessive, we note that it was significantly less than the 75-year maximum sentence that could have been imposed upon the attempted murder convictions (*see* Penal Law § 70.02 [3])—crimes defendant continues to freely admit to committing. It was also less than a sentence recently affirmed by this Court based upon similar conduct and in the face of nearly identical claims (*People v Bonelli*, 41 AD3d 972, 974 [2007]).

*of a negotiated sentence" (id.* at 9-10 [emphasis added]). That is, "a bargained-for waiver of the right to appeal . . . does not operate to deprive the appellate court of its jurisdiction of the appeal. Instead, it *merely forecloses appellate review of all claims that might be raised on appeal,* except, of course, those categories of claims that survive such waivers under our case law" *(People v Callahan,* 80 NY2d 273, 285 [1992] [emphasis added]).[2]

Indeed, upholding a defendant's election to foreclose discretionary review of a negotiated sentence serves an important public interest concern. "The important goals of fairness and finality in criminal matters are accomplished only insofar as the parties are confident that the carefully orchestrated bargain of an agreed-upon sentence will not be disturbed as a discretionary matter" *(People v Lopez,* 6 NY3d at 256 [internal quotation marks and citations omitted]; *see People v Seaberg,* 74 NY2d at 10). Thus, "[a] defendant may not subsequently eviscerate that bargain by asking an appellate court to reduce the sentence in the interest of justice—*realistically an issue that as a practical matter is brought to an appellate court's attention only when raised by defendants" (People v Lopez,* 6 NY3d at 255-256 [emphasis added]). In our view, that bargain is similarly eviscerated, contrary to the well-established public policy of this state, when an appellate court purports to honor a defendant's waiver by rejecting a challenge to the excessiveness of a sentence as

---

2. As the quoted language illustrates, the dissent's expressed concern over language in our decision "suggest[ing] that any action on the part of a *defendant* . . . can work to restrict the Appellate Division in the exercise of [the] authority" to reduce unjust sentences is more properly directed at the Court of Appeals decisions in *People v Seaberg (supra)* and *People v Callahan (supra).* While this Court had previously declined to adopt the dissent's views regarding a defendant's ability to foreclose our review of negotiated sentences *(compare People v Maye,* 143 AD2d 483, 484 [1988], *lv denied* 73 NY2d 788 [1988], *with People v Bourne,* 139 AD2d 210, 214-215 [1988], *lv denied* 72 NY2d 955 [1988]), the Court of Appeals definitively resolved the issue in *People v Seaberg* (74 NY2d at 9-10 [rejecting *Bourne*]), a case that is nearly two decades old and that was reaffirmed just last year in *People v Lopez* (6 NY3d at 255-256). Of course, even if we do not agree with the rules of law set forth in the decisions of the Court of Appeals, we are bound to follow those rules *(see e.g. Albany County Indus. Dev. Agency v Gastinger Ries Walker Architects,* 144 AD2d 891, 893 [1988], *appeal dismissed* 73 NY2d 1010 [1989], *lv denied* 74 NY2d 605 [1989]; *Bull v Stichman,* 273 App Div 311, 316 [1948], *affd* 298 NY 516 [1948]; *Scott v King,* 51 App Div 619 [1900]). Thus, to the extent that any of our decisions may have failed to recognize that a valid appeal waiver "foreclose[s] review of a negotiated sentence" *(People v Seaberg,* 74 NY2d at 10; *see e.g. People v Coleman,* 281 AD2d 653 [2001]), those decisions should no longer be followed.

barred by an appeal waiver, but then reduces the sentence—just as requested—and deems the reduction to be "sua sponte."[3]

Turning to the waiver at issue here, after "considering all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement and the age, experience and background of the accused" (*People v Seaberg*, 74 NY2d at 11), we conclude that defendant knowingly, intelligently and voluntarily waived his right to appeal. A review of the plea colloquy reveals that County Court initially explained the terms of this particular plea, including that defendant was waiving his right to appeal, and elicited the agreement of both defendant and his counsel that they understood the terms of the plea to be as the court had recited. Contrary to defendant's argument, the court thereafter "describ[ed] the nature of the right being waived without lumping that right into the panoply of trial rights automatically forfeited upon pleading guilty and elicit[ed] an] agreement[ ] of understanding from . . . defendant" (*People v Lopez*, 6 NY3d at 257).

Even assuming that County Court's discussion was inadequate, however, defendant signed a written appeal waiver in open court at sentencing, acknowledging that he had consulted with counsel regarding the waiver and that counsel had advised him of all the legal ramifications of the waiver (*see People v Ramos*, 7 NY3d 737, 738 [2006]). Although defendant asserts that County Court should have elicited his express acknowledgment on the record that he had, in fact, signed the waiver and done so with full understanding and awareness of its contents, such an inquiry was not required in light of the execution of the waiver *in open court*—which would have necessarily familiarized the court with the circumstances surrounding the waiver's execution (*cf. People v Callahan*, 80 NY2d at 283). Furthermore, defense counsel, who signed the waiver as a witness and continues to represent defendant in connection with this appeal, does not dispute the accuracy of the written waiver's state-

---

**3.** Such an action on our part would, of course, also reflect a fundamental misunderstanding of the term "sua sponte," which is defined as "[w]ithout prompting or suggestion; on its own motion" (Black's Law Dictionary 1464 [8th ed 2004]). Reduction of defendant's sentence in the interest of justice, as requested, would not be "without prompting or suggestion"; rather, it would be an action taken upon defendant's appeal, not "on [our] own motion," regardless of whether we claimed to be upholding the appeal waiver or not. In any event and as explained above, the Court of Appeals has repeatedly held that the Appellate Division does not have the power to reduce a defendant's sentence under such circumstances in stating that a valid, bargained-for waiver of the right to appeal "foreclose[s] review of a negotiated sentence" (*People v Seaberg*, 74 NY2d at 10).

ment that it was made in open court and, despite the dissent's misgivings about counsel's ability to explain the right, defendant does not claim that counsel's advice regarding his right to appeal was in any way deficient or inadequate (see People v Fludd, 33 AD3d 1124, 1125 [2006]; People v Greene, 7 AD3d 923, 923 [2004], lv denied 3 NY3d 659 [2004]; cf. People v Edwards, 37 AD3d 871, 872 [2007], lv denied 8 NY3d 945 [2007]). Given the undisputed facts that the written waiver was executed in open court and there was a record discussion, albeit brief, of the waiver with defendant by the court, it cannot be said, as in People v Callahan (80 NY2d at 283)—a case in which there was no indication that the court was even aware of the waiver—that we have been presented with a "silent record" preventing any determination of the waiver's validity.

Finally, while defendant argues that his waiver should be deemed involuntary due to his youth, history of mental illness and use of the medication Paxil—which he claims causes impaired judgment and serious emotional side effects—at the time of the plea,[4] we note that counsel did not raise any concerns regarding defendant's competency at that time or move to vacate the plea thereafter on the ground that defendant was not capable of understanding the proceedings (see generally People v Bagley, 34 AD3d 992, 993 [2006], lv denied 8 NY3d 878 [2007]; People v D'Adamo, 281 AD2d 751, 753 [2001]). Nor did defendant's responses to County Court's inquiries regarding the impact of the Paxil medication on his thinking and ability to understand the proceedings give any indication that he was "uninformed, confused or incompetent" during the plea colloquy (People v Alexander, 97 NY2d 482, 486 [2002]; see People v Williams, 35 AD3d 971, 972 [2006], lv denied 8 NY3d 928 [2007]). More fundamentally, defendant's argument that his mental illness, medication and youth rendered him incapable of understanding the appeal waiver would apply with equal force to the guilty plea in its entirety, yet he provides us with no explanation for his decision to challenge just one term of the plea bargain in this regard—the appeal waiver—as opposed to the voluntariness of the plea as a whole. Given the circumstances under which this particular plea and waiver were

4. Despite the extensive list of medications prescribed to defendant that is set forth in the dissent, we reiterate that, at the time of the plea, defendant was taking only the medication Paxil. Inasmuch as there is not even a suggestion in this record that the additional prescription medications that he may have taken in the past had any impact on his ability to understand the consequences of his waiver during the relevant time period, the prior "inadequate[ ] or improper[ ] manage[ment]" of defendant's illness perceived by the dissent is simply irrelevant to the issues before us on this appeal.

entered, it is both disingenuous and legally inconsistent to argue that defendant's youth, inexperience and psychological condition were such that he was unable to understand that he was waiving his right to appeal without also arguing that these same facts precluded a voluntary plea in the first instance.

In sum, we conclude that defendant validly waived his right to appeal and, thus, his claims regarding the severity of his sentence are precluded (see People v Ramos, 7 NY3d at 738; People v Lopez, 6 NY3d at 256-257; People v Collier, 35 AD3d 1037, 1037 [2006]; People v Nason, 31 AD3d 818, 819 [2006], lv denied 7 NY3d 869 [2006]; cf. People v Cain, 29 AD3d 1157, 1157 [2006]).

Crew III, Peters and Carpinello, JJ., concur.

Cardona, P.J. (dissenting). Respectfully, I dissent. The Court of Appeals has instructed that an appeal waiver, "to be enforceable, must not only be voluntary but also knowing and intelligent" (People v Seaberg, 74 NY2d 1, 11 [1989]; see People v Lopez, 6 NY3d 248, 256 [2006]). Specifically, "the defendant [must] comprehend[ ] the nature of the waiver of appellate rights" (People v Lopez, 6 NY3d at 256; see People v Ramos, 7 NY3d 737, 738 [2006]), and, notably, "[t]he record must establish that the defendant understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty" (People v Lopez, 6 NY3d at 256 [emphasis added]; see People v Guthinger, 36 AD3d 1075, 1076 [2007], lv denied 8 NY3d 923 [2007]).

In my opinion, based upon this record, I cannot agree that the requirements set forth above have been met in order to conclude that the waiver herein is enforceable. County Court's discussion with defendant concerning his waiver of appeal consisted only of one question inserted in the midst of the lengthy plea colloquy:

"THE COURT: Do you waive your right to appeal this process which means it is going to end right here with this court; you can't go to a higher court?

"THE DEFENDANT: Yes."

That question was the 17th of 20 "yes or no" questions posed by the court in seriatum, several of which asked defendant whether he understood that he was waiving those particular rights forfeited by a guilty plea, such as the right not to incriminate himself and the right to a jury trial. Significantly, the record does not contain an adequate explanation to defendant of the nature of the waiver of his appellate rights nor does it indicate any attempt to ensure that defendant understood he

was relinquishing a "valued right" that was "separate and distinct" from those rights automatically extinguished by virtue of his guilty plea (*People v Lopez*, 6 NY3d at 256, 257; *see People v Edwards*, 37 AD3d 871, 872 [2007], *lv denied* 8 NY3d 945 [2007]; *People v Guthinger*, 36 AD3d at 1076; *People v Cain*, 29 AD3d 1157 [2006]; *People v Popson*, 28 AD3d 870, 871 [2006]).[1] Under these circumstances, in this particular context, the single question to defendant during his plea allocution and his one-word response are insufficient to constitute an effective waiver.

Nor is this ineffective oral waiver saved by the written waiver form executed by defendant one month later, which stated as follows: "I, Jon W. Romano, the above named defendant, waive my right to appeal from my conviction and sentence in the above-entitled Indictment as part and parcel of my plea bargain agreement with the Office of the Rensselaer County District Attorney. This waiver is made in open court after consulting with my attorney who has informed me of all the legal ramifications of this waiver of my right to appeal." Notably, although the written waiver states that it was executed in open court, the record does not include any inquiry by County Court to verify that defendant reviewed the waiver with his attorney and fully understood its consequences, nor does it demonstrate "that the court was familiar with the circumstances surrounding the document's execution" (*People v Callahan*, 80 NY2d 273, 283 [1992]; *see People v Morgan*, 39 AD3d 889 [2007], *lv denied* 9 NY3d 848 [2007]). Importantly, defendant's understanding "cannot be inferred from a silent record" (*People v Callahan*, 80 NY2d at 283), particularly where, as here, the document specifies that defendant's waiver of his right to appeal is "part and parcel of my plea bargain agreement." At best, that language is confusing and could be construed as "characteriz[ing] an appeal as one of the many rights automatically extinguished upon entry of a guilty plea" (*People v Lopez*, 6 NY3d at 256). Absent further clarification by the court on the record, it cannot be confirmed that defendant understood the appellate process or the significance of the distinct and valuable right he was waiving (*see People v Ramos*, 7 NY3d at 738; *People v Lopez*, 6 NY3d at 256).[2]

Additionally, and in further support of my view that defen-

---

1. I am mindful that County Court did not have the benefit of the Court of Appeals' decision in *People v Lopez* (*supra*) at the time this plea was allocuted. That case clarified the importance of distinguishing the waiver of the right to appeal as separate from the rights normally surrendered upon a plea of guilty.

2. Although defendant was represented by a well-respected and experienced attorney, on this record, I cannot assume that counsel explained to defendant all that *People v Lopez* (*supra*) requires, since, as already indicated, that case

dant's appeal waiver is unenforceable, I note that "all the relevant facts and circumstances surrounding the waiver, including . . . the age, experience and background of the accused" (*People v Seaberg*, 74 NY2d at 11; *see People v Hidalgo*, 91 NY2d 733, 736 [1998]; *People v Callahan*, 80 NY2d at 280), weigh against inferring that defendant possessed any knowledge or understanding of his appeal rights not explicitly apparent on the record. At the time that he purported to waive his right to appeal, defendant had just turned 17 years old, very nearly the youngest age at which any defendant could be confronted with the critical decision at issue here. He had no prior experience with the criminal justice system. And, moreover, the record undisputedly demonstrates that defendant had a documented medical history of severe depression and anxiety, for which he was still under treatment at the time of his waiver. In this context, defendant's youth, inexperience and psychological condition do not support the assumption that he grasped the distinction between those rights automatically forfeited by his guilty plea and those rights he was asked to separately waive. I raise these concerns not to suggest that defendant was not capable of waiving his appeal rights, but rather to underscore my conviction that absent an adequate record we should not infer that this defendant understood the consequences of his purported waiver. Finally, given the clear distinction between appeal waivers and guilty pleas, which was emphasized by the Court of Appeals in *People v Lopez* (*supra*), I do not agree with the majority's implication that a defendant may challenge the validity of an appeal waiver on the ground that it was not knowing and intelligent only if he also challenges his guilty plea on the same ground. I find no support in case law for this all-or-nothing requirement. Accordingly, under all of the circumstances enumerated herein, I conclude that defendant's waiver of his right to appeal was ineffective and does not foreclose review of his sentence on the ground that it is harsh and excessive.

Next, although it is my view that the appeal waiver in this case is ineffective and, thus, unenforceable, I nonetheless express my concern over language in the majority opinion that could lead to a conclusion that a defendant's *valid* waiver of the right to appeal does not just restrict that defendant's own right to request that this Court invoke its interest of justice jurisdiction to reduce a sentence (*see People v Lopez*, 6 NY3d at 256)

---

was decided well after judgment was entered in this case. Moreover, it could not be foreseen that *Lopez* would further establish that criminal defendants who validly waived their appeal rights could not affirmatively request that the Appellate Division invoke its interest of justice jurisdiction to review their sentences.

but, further, leads inexorably to a restriction of this Court's own constitutionally mandated authority to exercise that jurisdiction in cases where we deem it appropriate despite the presence of a valid appeal waiver (*see e.g. People v Coleman*, 281 AD2d 653 [2001]). Significantly, the importance of our exclusively-granted jurisdiction to reduce unjust sentences as a matter of discretion, even when they are otherwise lawfully imposed, is well described in decisional law (*see e.g. People v Lopez*, 6 NY3d at 259-264 [Smith, J., concurring]) and is rooted in our Constitution (NY Const, art VI, § 4 [k]). When exercised by a majority panel of the Appellate Division, that power is not amenable to curtailment by the Legislature (*see People v Pollenz*, 67 NY2d 264, 268 [1986]) or review by our state's highest court (*see e.g. People v Dawn Maria C.*, 67 NY2d 625, 627 [1986]; *People v Thompson*, 60 NY2d 513, 521 [1983]). The existence of this jurisdiction to intervene and correct injustice when all other safeguards have failed must contradict the suggestion that any action on the part of a *defendant*, the precise individual that the power is meant to ultimately protect, can work to restrict the Appellate Division in the exercise of that authority. In other words, I do not agree that, in a situation where this Court is confronted with what is essentially an unfair sentence that was imposed despite even the best efforts of the courts, attorneys and the defendants themselves, we would have no choice but to sit idly by while the injustice proceeded unchecked.

Finally, I turn to a consideration of the severity of defendant's prison sentence—20 years. In my view, under all the circumstances herein, that sentence is harsh and excessive and should be reduced (*see* CPL 470.15 [2] [c]). In arriving at that conclusion, I certainly do not diminish the gravity of the harm that defendant actually caused to the innocent victims by his actions. Indeed, we have all witnessed the devastating results of gun violence in schools; it is unacceptable. Nevertheless, justice and the law demand that each case be evaluated on its own facts. As previously mentioned, defendant has a documented history of mental illnesses. These illnesses led to his brief hospitalization in 2003, and his extensive course of treatment for these illnesses consisted of, among other things, numerous prescription medications, including Zoloft, Ziprexa, Effexor, Celexa, Paxil and Xanax. Here, it is apparent from the information in the record, which is largely undisputed, that defendant's suicidal thoughts and extensive mental health illnesses were inadequately or improperly managed. Alan Tuckman, a psychiatrist who evaluated defendant following the subject incident, opined that, despite the fact that defendant suffered from a severe mental illness, he "was essentially poorly and effectively

920

untreated in the months prior to this incident." Tuckman went on to state that, had defendant been adequately treated, "it is very likely that his depression could well have been kept under control and the incident leading to his arrest would have been averted."

In light of this uncontradicted medical proof and keeping in mind defendant's youth, lack of prior criminal history and the numerous letters of support written on his behalf (*see e.g. People v Strawbridge*, 299 AD2d 584, 594 [2002]; *People v Coleman*, 281 AD2d at 654), 20 years of incarceration can only be deemed harsh and excessive (*see People v Khuong Dinh Pham*, 31 AD3d 962 [2006]; *People v Wilt*, 18 AD3d 971 [2005], *lv denied* 5 NY3d 771 [2005]; *People v Strawbridge*, 299 AD2d at 594). Accordingly, I would reduce the sentence to a term of imprisonment more appropriate to the unique facts and circumstances of this case (*see* CPL 470.15 [2] [c]; [6] [b]) and reach that issue based upon the invalidity of the waiver or, alternatively, in the interest of justice.

Ordered that the judgment is affirmed.