█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROSCHEEM GRAY, Appellant. [59 NYS3d 580]—

Garry, J. Appeals (1) from a judgment of the County Court of Albany County (Herrick, J.), rendered October 31, 2014, convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the third degree and criminally using drug paraphernalia in the second degree, and (2) by permission, from two orders of said court, entered February 24, 2015 and August 19, 2015, which denied defendant's motions pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Pursuant to a negotiated plea agreement, and in full satisfaction of a three-count indictment, defendant pleaded guilty to criminal possession of a controlled substance in the third degree and criminally using drug paraphernalia in the second degree. The plea agreement included a waiver of the right to appeal, but with a reservation relative to issues arising from the *Mapp*/suppression hearing. County Court sentenced de-

fendant, consistent with the terms of the agreement, to an aggregate prison term of six years, to be followed by two years of postrelease supervision. Defendant appeals.

Initially, contrary to defendant's contention, we find that his waiver of appeal was knowing, voluntary and intelligent (*see People v Sanders*, 25 NY3d 337, 340 [2015]; *People v Lopez*, 6 NY3d 248, 256 [2006]; *People v Dolberry*, 147 AD3d 1149, 1150 [2017]; *People v Lanahan*, 276 AD2d 906, 909 [2000], *lv denied* 95 NY2d 965 [2000]). County Court specifically advised defendant that his waiver of appeal was "separate and apart" from the other waivers related to his guilty plea, which defendant acknowledged both verbally and also by signing a written appeal waiver (*see People v Upshur*, 150 AD3d 1552, 1553 [2017]; *People v Taylor*, 144 AD3d 1317, 1318 [2016], *lv denied* 28 NY3d 1151 [2017]; *compare People v Williford*, 124 AD3d 1076, 1077 [2015], *lv denied* 25 NY3d 1209 [2015]). The valid waiver thus precludes defendant's challenges based upon the *Sandoval* compromise, the denial of his motion to suppress certain oral statements, and the asserted *Brady* violation (*see People v Chant*, 140 AD3d 1645, 1648 [2016], *lv denied* 28 NY3d 970 [2016]; *People v Stone*, 105 AD3d 1094, 1095 [2013]; *People v Colon*, 101 AD3d 1161, 1161-1162 [2012], *lv denied* 21 NY3d 1003 [2013]).[1]

As to the *Mapp* issues, defendant claims that the warrantless search of his residence was improper, and that the consent provided by his girlfriend, with whom he shared the residence, was invalid. At the suppression hearing, a senior investigator with the Town of Coeymans Police Department testified that he assisted a fellow officer in conducting a traffic stop of a vehicle driven by the girlfriend, and observed her "fiddling with her pockets" as he spoke with her. She then produced several oxycodone pills from her pocket and stated that she had a valid prescription for them at her apartment, which she offered to show to the investigator and his fellow officer. Upon their arrival at the apartment, the girlfriend unlocked the door, invited the officers in and showed them a prescription bottle. The bottle did not match the pills that had been found earlier on her person. Upon request, the girlfriend then provided verbal consent for the officers to search the apartment. The second officer picked up a digital scale from atop a kitchen cabinet that

---

**1.** Were these issues before us, we would have found that the *Brady* claim lacks merit, and that County Court reached an appropriate *Sandoval* compromise (*see People v Green*, 270 AD2d 566, 568-569 [2000], *lv denied* 95 NY2d 853 [2000]) and did not err in denying the motion to suppress defendant's statements (*see People v Rodney*, 85 NY2d 289, 293 [1995]).

had a white powdery residue. The investigator then requested and obtained the girlfriend's written consent to continue the search. The girlfriend showed the officers to a closet in the bedroom, with an open door and containing both men's and women's clothing, where they found a sweatshirt wrapped around a plastic bag containing over 80 ounces of cocaine.[2]

We agree with County Court that the evidence established that the police reasonably relied upon the girlfriend's apparent authority to consent to the search of the shared premises, including the closet (*see People v Cosme*, 48 NY2d 286, 292-293 [1979]). "Even in the absence of a warrant, police may lawfully search a residence where an inhabitant with apparent authority to consent to the search freely and voluntarily does so" (*People v Grillo*, 128 AD3d 1103, 1104 [2015] [citations omitted]). The written consent form did not advise the girlfriend that she had the right to refuse consent, although the investigator testified that he informed her of this verbally. However, neither the failure to give such advice nor the fact that the girlfriend had been briefly handcuffed after she produced the oxycodone pills, without more, necessarily rendered her consent involuntary (*see People v Curtis*, 144 AD3d 1199, 1200 [2016]; *People v Williford*, 124 AD3d at 1078). Reviewing the totality of the circumstances presented here, and deferring to County Court's credibility determinations (*see People v Garnsey*, 288 AD2d 761, 762 [2001], *lv denied* 97 NY2d 754 [2002]), we find that the girlfriend's consent was freely and voluntarily given.

"Defendant's argument that his guilty plea was not knowing, voluntary and intelligent is not precluded by his waiver of appeal and was preserved by his unsuccessful motion to withdraw his guilty plea" (*People v Pixley*, 150 AD3d 1555, 1556 [2017] [citation omitted]; *see People v Romano*, 45 AD3d 910, 912 [2007], *lv denied* 10 NY3d 770 [2008]). However, to the extent that defendant asserts that the ineffective assistance of counsel affected the voluntariness of his plea, we find this claim to lack merit. Notably, many of the claims that defendant advances on appeal are the same challenges that his trial counsel had already presented on his behalf, and he received an advantageous plea offer based upon those efforts (*see People v Dickson-Eason*, 143 AD3d 1013, 1014 [2016], *lv denied* 28 NY3d 1123 [2016]; *People v Briggs*, 138 AD3d 1355, 1356 [2016], *lv denied* 28 NY3d 927 [2016]). Upon review, we find no error in County Court's denial of the motion to withdraw his plea, which was addressed to its discretion (*see People v Young*, 112 AD3d 1068,

---

**2.** The investigator obtained a search warrant thereafter, based upon the consent previously given.

1069 [2013], *lv denied* 22 NY3d 1204 [2014]; *People v Mitchell*, 73 AD3d 1346, 1347 [2010], *lv denied* 15 NY3d 922 [2010]).

We next consider defendant's related challenge to his predicate felony status, which similarly survives his appeal waiver (*see People v Hartfield*, 151 AD3d 1116, 1118 [2017]; *People v Glynn*, 72 AD3d 1351, 1351-1352 [2010], *lv denied* 15 NY3d 773 [2010]) and was also preserved for review. In a prior plea offer that defendant had rejected, the People expressed their intent to use defendant's prior violent felony conviction for criminal possession of a weapon in the third degree to determine his predicate felony status. In the course of the subject plea proceeding, County Court stated that defendant would be sentenced as a nonviolent predicate offender to an aggregate prison term of six years followed by three years of postrelease supervision. However, at sentencing, the People filed a predicate felony statement in which they, once again, sought to use defendant's past violent felony as his predicate offense. Defendant was afforded an opportunity to review that statement and confer with counsel and acknowledged the conviction; defendant's challenge was that he had filed a motion to vacate that prior conviction.[3] However, that conviction met the statutory requirements to be used as a predicate violent felony (*see* Penal Law §§ 70.02 [1] [c]; 70.06 [1] [b]; 70.70 [4] [a]), and we find no error in County Court using it to determine defendant's predicate felony status (*see* CPL 400.21; *People v Harris*, 61 NY2d 9, 20 [1983]; *see also People v Hartfield*, 151 AD3d at 1118; *compare People v Lewis*, 45 AD3d 898, 899 [2007]).

Finally, and significantly, County Court did not increase the agreed-upon prison terms.[4] The six-year prison term, which placed defendant in the middle of the permissible sentencing range if his prior felony conviction was not a violent felony (*see* Penal Law § 70.70 [3] [b] [i]), is the statutory minimum prison

---

3. Defendant's challenge is premised on his assertion that the legislature's repeal of the subsection under which he was convicted of criminal possession of a weapon in the third degree prevented County Court from using the sentence as a predicate felony (*see* Penal Law § 265.02 [former (4)]; L 2006, ch 742, § 1). However, the Legislature did not decriminalize the act upon which defendant was convicted; instead, that act now constitutes criminal possession of a weapon in the second degree (*see* Penal Law § 265.03 [3]; L 2006, ch 742, § 2). Regardless, at the time that defendant was convicted, his act constituted a violent felony (*see* Penal Law § 70.70 [1] [former (c)]; L 2007, ch 7, § 32).

4. In fact, defendant received an additional benefit when County Court reduced the negotiated postrelease supervision term from three years to two years (*see e.g. People v Collier*, 91 AD3d 987, 988 [2012], *affd* 22 NY3d 429 [2013], *cert denied* 573 US —, 134 S Ct 2730 [2014]).

term for a second felony drug offender previously convicted of a violent felony (*see* Penal Law § 70.70 [1] [b]; [4] [b] [i]). As such, we find that defendant received the benefit of his bargain (*compare People v Lewis*, 45 AD3d at 899). Defendant's remaining contentions have been reviewed and determined to lack merit.

Peters, P.J., Rose, Clark and Rumsey, JJ., concur. Ordered that the judgment and orders are affirmed.